PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

WARREN SPIVEY,                              )
                                            )     CASE NO.  4:16CV0384
            Petitioner,                     )
                                            )
      v.                                    )     JUDGE BENITA Y. PEARSON
                                            )
CHARLOTTE JENKINS, Warden,                  )
                                            )     **MEMORANDUM OF OPINION**
            Respondent.                     )     **AND ORDER**
                                                  [Resolving ECF Nos. 27 and 32]


            Pending in this capital habeas corpus case is Petitioner Warren Spivey's Motion to

Amend Habeas Petition with Additional Claims (ECF No. 27) and Motion to Hold Petition for

Writ of Habeas Corpus in Abeyance Pending Exhaustion of Newly Discovered Evidence Being

Presented to State Court (ECF No. 32).  Respondent Charlotte Jenkins, Warden, opposes the

motions.  ECF Nos. 30 and 33.  Spivey replied to Respondent's memoranda in opposition.  ECF

Nos. 31 and 34.  For the following reasons, the Court denies Spivey's motion to stay and grants

his motion to amend.

## I. Background

            On January 18, 1989, a Mahoning County Grand Jury indicted Spivey for the aggravated

murder of Veda Eileen Vesper and related charges.  *See State v. Spivey*, 81 Ohio St.3d 405, 405

(1998).  By September of that year, Spivey's mental condition and intellectual abilities had

become forefront in his case.  In ruling on Spivey's direct appeal, the Ohio Supreme Court

recounted:

(4:16CV0384)

On September 19 or 20, appellant entered [] plea[s] of not guilty and not guilty by reason of insanity, moved for an order for psychological or psychiatric evaluation in connection with the insanity plea, and requested the appointment of Dr. A. James Giannini to evaluate appellant's mental condition at the time of the offenses.  See former R.C. 2945.39.  On September 20, the trial court ordered the Forensic Psychiatric Center of District Eleven, Inc. (not Giannini) to conduct the examination of appellant.  On September 21, appellant moved for the appointment of an independent forensic examiner (*i.e.*, Giannini or some other psychiatrist chosen by the defense) to evaluate appellant's mental condition at the time of the offenses.  See former R.C. 2945.39(C). . . .

Prior to September 25, the Forensic Center issued a report by Dr. Stanley J. Palumbo, a psychologist, indicating that appellant was sane at the time of the offenses. . . .  On September 26, the trial court, pursuant to former R.C. 2945.39, appointed Giannini to conduct a psychiatric evaluation of appellant for purposes of the insanity plea.  Giannini's psychiatric evaluation of appellant was completed on September 29, and Giannini apparently found appellant to be sane at the time of the murder and found him competent to stand trial.

On October 2, 1989, appellant waived his right to trial by jury and elected to be tried by a three-judge panel.  Appellant's signed jury waiver form was filed in the cause and made part of the record thereof in accordance with the requirements of R.C. 2945.05.  Thereafter, on October 3, the members of the three-judge panel . . . were duly designated, and trial was set to commence October 10.  On October 6, appellant moved for a continuance of the October 10 trial date pending the completion of the DNA testing.

On October 10, the parties appeared in chambers before Judges Economus and McNally.  The chambers discussion involved, among other things, a plea agreement that had been reached between the state and the defense.  The discussions indicated that appellant had agreed to plead no contest to the charges and specification set forth in the indictment.  In exchange, the state agreed that, during the penalty phase, the prosecution would be limited to cross-examination of defense witnesses and would not introduce independent evidence during mitigation except to rebut false or perjured testimony.  Additionally, the state agreed to refrain from making any recommendation concerning the death penalty.  Following these discussions, appellant appeared before the three-judge panel, withdrew his pleas of not guilty and not guilty by reason of insanity, and entered a written plea of no contest to each count.  Following an extensive Crim.R. 11 colloquy between the panel and appellant, the panel accepted appellant's pleas of no contest.

2

(4:16CV0384)

*Id.* at 406-07.

On October 11, 1989, the three-judge panel found Spivey guilty of all charges and the death-penalty specification to the aggravated murder charge. *Id.* at 407. During the mitigation phase, Spivey presented two mental health experts to testify about his mental health and intellectual abilities. *Id.* at 420-22. The Ohio Supreme Court summarized their testimony as follows:

> Dr. Abrams, a developmental pediatrics specialist, testified that he had diagnosed appellant in 1983 as having XYY Syndrome, a genetic chromosome abnormality. According to Abrams, individuals with XYY Syndrome tend to be tall and thin, have less muscle development than an average person, tend to have learning problems, and have minor congenital abnormalities. Abrams testified that there is an increased risk of behavioral problems associated with XYY Syndrome. According to Abrams, XYY Syndrome does not itself result in mental disease, but "results in an increased risk for mental disease." Abrams testified further that appellant's chromosome abnormality placed him at risk for committing criminal acts, but that the syndrome itself did not cause him to be aggressive and to commit violent acts. Rather, Abrams indicated that family environment plays a vital role in whether a person with XYY syndrome is likely to engage in criminal behavior. In this regard, Abrams testified that appellant "did not have a fair shake either from mother nature or from the environment." Abrams concluded that "[t]he combination of the two factors, his genetics, the family, and failure of the environment to fulfill his needs leads to his criminal behavior and violent behavior." Abrams also indicated that when he examined appellant in 1983, appellant was not aggressive and was capable of controlling his impulses. In addition to diagnosing XYY Syndrome, Abrams diagnosed appellant in 1983 as suffering from "[c]onduct disorder, unsocialized, nonaggressive," "[d]evelopmental language disorder, receptive type," and "[a]ttention deficit disorder without hyperactivity."
>
> Dr. James R. Eisenberg, a court-appointed clinical and forensic psychologist, also testified in mitigation. Eisenberg first interviewed appellant in October 1989. Between that time and the time of the mitigation hearing, Eisenberg interviewed appellant on several occasions, performed psychological testing, reviewed appellant's extensive records, and, it seems, interviewed members of his family. Eisenberg testified that appellant has a full scale I.Q. of 74, which, according to Eisenberg, indicated that appellant was "in the borderline range of intelligence."

3

(4:16CV0384)

      Eisenberg also performed testing to determine appellant's adaptive level of functioning, and concluded that "[i]ntellectually we are looking at someone who is basically functioning much like a ten year old."  Eisenberg reviewed appellant's prior hospital records and various other reports and information concerning appellant.  Eisenberg testified that appellant's records showed or consistently showed the presence of XYY Syndrome, conduct disorder, developmental language disorder, attention deficit disorder, learning problems, temporal lobe seizures, minimal brain dysfunction, juvenile arthritis, and the possibility of latent schizophrenia.

      Eisenberg diagnosed appellant as suffering from an attention deficit disorder, "alcohol and marijuana abuse, possible dependency," and a "borderline personality disorder with schizoid and anti-social features."  Eisenberg testified that, in his opinion, "in a variety of settings, based on all the conditions that [appellant] carries with him, those conditions render him substantially impaired in specifically controlling impulse."

*Id.* at 421-22.  On November 20, 1989, the three-judge panel sentenced Spivey to death.  *Id.* at 407.

      On direct appeal to the Ohio Supreme Court, Spivey challenged the trial-court panel's findings regarding his competency to waive his right to a jury trial and enter the pleas of no contest.[1]  *See id.* at 408-11.  The Ohio Supreme Court rejected the claims, finding, in particular, "no indicia of incompetency" warranting a hearing on his no contest pleas.  *Id.* at 410.  The state's highest court affirmed Spivey's convictions and death sentence.  *Id.* at 408.  *See also State v. Spivey*, 84 Ohio St.3d 24, 25 (1998) (denying application to reopen direct appeal on claims of ineffective assistance of trial counsel and competence to enter no contest plea).

---

     [1] Spivey did not raise these competency claims to the state appellate court on direct appeal.  *See* ECF No. 19-6 at PageID #: 1295; *see also State v. Spivey*, No. 89 C.A. 172, 1997 WL 16196 (Ohio App. 7th Dist. Jan. 13, 1997).

4

(4:16CV0384)

Spivey again raised his competency and competency-related ineffective-assistance claims in a petition for post-conviction relief in the trial court. *See State v. Spivey*, No. 00 CA 106, 2002 WL 418373, at *12 (Ohio App. 7th Dist. March 15, 2002). The trial court granted him a hearing, at which he offered the testimony of Dr. Eisenberg, whom had testified at his mitigation hearing. *Id.* at *7-8. The state appellate court, on review of the trial court's denial of the petition, provided this account of his testimony:

> . . . As additional evidence *de hors* the record, Spivey presents testimony from Dr. Eisenberg. When asked whether he had an opinion regarding Spivey's competency at the post-conviction hearing, Dr. Eisenberg stated, "My opinion is he was not competent to waive a jury, to enter a plea of no contest and all the things that follow from that."
>
> Interestingly, Dr. Eisenberg never revealed this discovery to trial counsel and now maintains he was hired only to present evidence at the mitigation stage of the proceedings. He explained that he was not retained to present evidence on competency. Therefore, when he discovered Spivey's alleged incompetency, he did not reveal this discovery as he had no ethical duty to do so. Moreover, if he had been hired for the purpose of assessing competency, Dr. Eisenberg would have conducted further testing. Eisenberg further testified that he discussed Spivey's intellectual capacity with trial counsel. However, he did not recall having a discussion regarding the specific issues on competency.

*Id.* at *7. The court of appeals affirmed the trial court's judgment, *id.* at *12, and the Ohio Supreme Court subsequently declined jurisdiction (ECF No. 19-13 at PageID #: 2509).

In 2002, Spivey filed a second post-conviction petition in the trial court, raising a claim under the newly issued Supreme Court decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), which ruled that intellectually disabled prisoners were not eligible for execution. *See State v. Spivey*, No. 12 MA 75, 2014 WL 818640 (Ohio App. 7th Dist. Feb. 21, 2014). In 2004, Spivey retained Dr. Jeffrey Smalldon to serve as his expert on intellectual disability. *Id.* at *2; ECF No. 19-13 at

5

(4:16CV0384)

PageID# 2742-43.  In 2008, at Spivey's request, the trial court stayed the proceedings to allow

for a competency determination.  *Spivey*, 2014 WL 818640, at *2.  Dr. Thomas Gazley

determined that Spivey was competent to participate in the post-conviction proceedings.  The

trial court then ordered Dr. Gazley to evaluate Spivey for purposes of determining whether he

was intellectually disabled under *Atkins*.  *Id.*  At the hearing on Spivey's petition, both Dr.

Smalldon and Dr. Gazley testified that he was not intellectually disabled under *Atkins*.  *Id.* at *4.

The trial court denied the petition.  *Id.* at 3.  The state appellate court affirmed that judgment, *id.*

at *7, and the Ohio Supreme Court declined jurisdiction (ECF No. 19-17 at PageID#: 3447).

On February 19, 2016, Spivey filed in this Court a Notice of Intention to file a petition for

writ of habeas corpus.  ECF No. 1.  He informed the Court that the statute of limitations on his

Petition would expire on October 28, 2016.  ECF No. 10 at PageID #: 33.  Respondent disagreed,

calculating Spivey's limitations period would end on May 13, 2016.  ECF No. 13 at PageID #:

40.  In the Case Management Order (ECF No. 14), the Court determined "for scheduling

purposes" that Spivey's statute of limitations would expire on May 13, 2016, but acknowledged

the parties' rights to further litigate the matter.  ECF No. 14 at PageID #: 44-45.  The Court also

assigned briefing dates.  ECF No. 14 at PageID #: 45-51.

Spivey filed his Petition (ECF No. 17) on May 13, 2016.  In it, he asserts nine grounds for

relief, including claims alleging his lack of competency to stand trial, enter pleas of no contest ,

and waive a jury trial, his intellectual disability under *Atkins*, and the ineffective assistance of

counsel relating to his competency and intellectual abilities.  ECF No. 17 at PageID #: 101-18,

130-39.  Respondent filed her Return of Writ (ECF No. 23) on August 11, 2016.

6

(4:16CV0384)

Three days earlier, on August 8, 2016, Spivey had filed a motion requesting that the Court "modify" the Case Management Order (ECF No. 14) to allow his counsel until October 11, 2016, in which "to complete their investigation, and to research additional claims for an amended habeas petition."  ECF No. 21 at PageID #: 5887.  He explained that counsel were appointed only in February 2016 and were not able to obtain case records until March 2016.  ECF No. 21 at PageID #: 5888.  And because the Court determined the statute of limitations expired in May 2016 rather than the expiration date he initially thought governed his petition, he stated he did not have sufficient time in which to "fully investigate, research and prepare all of the possible claims associated with" his case.  ECF No. 21 at PageID #: 5888.  Spivey noted in particular the "preliminary findings" of Dr. Douglas Scambler that he is autistic, intellectually disabled, and incompetent.  ECF No. 21 at PageID #: 5888-89; Letter from Dr. Scambler (ECF No. 21-1).  The findings also indicate abnormal brain function, which he argued required a neuropsychological evaluation.  ECF No. 21 at PageID #: 5889.

Respondent argued that Spivey was attempting to obtain leave to amend his petition through an altered briefing schedule rather than through a motion seeking leave to amend as required by Fed. R. Civ. P. 15.  ECF No. 22 at PageID #: 5895.  The Court agreed and denied Spivey's motion.  Order (ECF No. 24).

Now, Spivey has filed a motion properly seeking leave to amend his Petition (ECF No. 27) with a proposed Amended Petition (ECF No. 27-2) attached.  He seeks to add new facts to his first and second grounds for relief, relating to his alleged incompetency and intellectual disability.  ECF No. 27 at PageID #: 6033.  He also seeks to add four new claims:  a claim under

(4:16CV0384)

existing ground seven, asserting trial counsel rendered ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to investigate and develop mitigating evidence relating to his mental health; and entirely new grounds ten through twelve, alleging, respectively, prosecutorial misconduct under *Brady v. Maryland*, 373 U.S. 83 (1963), for failing to disclose exculpatory evidence, trial-court error under *Miranda v. Arizona*, 384 U.S. 436 (1966), in failing to suppress his involuntary statement to police, and ineffective assistance of post-conviction *Atkins* counsel in failing to obtain an "appropriate" expert on intellectual disability.  ECF No. 27 at PageID #: 6033.  Spivey argues that he is entitled leave to amend as the amended petition was filed within the correct limitations period, and if it were not, equitable tolling should apply, or, in the alternative, the amendments relate back to claims asserted in the original timely petition.  *See* ECF No. 27 at PageID #: 6033-34.

Respondent opposes the motion.  ECF No. 30.  She maintains Spivey's proposed amendments are time-barred and do not relate back to his original petition, include "entirely new claims" that are procedurally defaulted or unexhausted, and are plainly meritless.  *See* ECF No. 30 at PageID #: 6187-88.

Spivey also has filed a Motion to Hold Petition for Writ of Habeas Corpus in Abeyance Pending Exhaustion of Newly Discovered Evidence Being Presented to State Court (ECF No. 32).  He asks the Court to stay these habeas proceedings and hold his Petition in abeyance while he returns to state court to present "newly discovered" evidence that has "render[ed] . . . new claims factually unexhausted."  ECF No. 32 at PageID #: 6208.  The "new claims" to which he refers are those raised in his proposed Amended Petition.  ECF No. 32 at PageID #: 6211-15.

8

(4:16CV0384)

The "new evidence" includes expert reports from Dr. Stephen Greenspan, who has concluded "there are strong indications that Mr. Spivey is intellectually disabled" (ECF No. 32 at PageID #: 6211; *see also* ECF No. 17-9 (Greenspan report)), and Dr. Douglas Scambler, who agrees with Dr. Greenspan's opinion regarding Spivey's intellectual abilities and also has diagnosed Spivey with autism spectrum disorder (ECF No. 32 at PageID #: 6212; *see also* ECF No. 27-3 (Scrambler report)).  It also includes an affidavit from a special education teacher of Spivey's, Karen Thompson, regarding Spivey's education and her observations of his intellectual abilities. ECF No. 32 at PageID #: 6214; *see also* ECF No. 27-4 (Thompson affidavit).  Finally, Spivey claims he has just discovered an exculpatory police report inside a sealed envelope that was filed with the trial court, but never disclosed to defense counsel at trial.  ECF No. 32 at PageID #: 6215; *see also* ECF No. 27-5 (police report).  He maintains the report shows there was no sign of forced entry into the victim's house, which contradicts a police detective's trial testimony that the door of the victim's home had been kicked open and had a footprint on it.  ECF No. 32 at PageID #: 6215.

Respondent opposes this motion as well.  ECF No. 33.  She argues the claims Spivey seeks to exhaust are not unexhausted, but are procedurally defaulted and meritless.  ECF No. 33 at PageID #: 6220.

The Court first will address Spivey's motion to stay.

9

(4:16CV0384)

## II. Analysis

### A.  Motion to Stay Habeas Proceedings and Hold Petition in Abeyance

State prisoners must fully exhaust federal constitutional claims in state courts before those claims may be reviewed by federal district courts *via* a habeas corpus petition.  28 U.S.C. § 2254(b)(1).  This entails giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The exhaustion doctrine refers, however, only to remedies still available at the time of the federal habeas review.  *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).  In that situation, procedural default, not exhaustion, bars federal habeas review.  *See, e.g.*, *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (internal citations omitted)) ("Because '[the exhaustion] requirement . . . refers only to remedies still available at the time of the federal petition,' it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law[.]'"); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

In *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court held that when a habeas petitioner presents a "mixed petition," with both exhausted and unexhausted claims, comity requires that state courts have the first opportunity to review the unexhausted claims.  *Id.* at 518-19.  *Lundy*'s "total exhaustion" requirement created a dilemma for petitioners, however, as a

10

(4:16CV0384)

return to state court could result in the unexhausted claims becoming time-barred under the

Antiterrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations.

To avoid this harsh result, in *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court

gave district courts two options when confronted with a mixed petition:  deny unexhausted

claims that are "plainly meritless," or, for good cause, stay the action and permit the petitioner to

present his unexhausted claim to state court and then return to federal court for review of the

perfected petition.  *Id.* at 277.  The *Rhines* Court explained that stay and abeyance is appropriate

"only in limited circumstances," when the district court determines that:  (1) there was good

cause for the petitioner's failure to exhaust claims in state court first; (2) the petitioner's

unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive

litigation tactics or intentional delay.  *Id.* at 277-78.  Stay and abeyance should be used sparingly,

the Court warned, because "if employed too frequently, [it] has the potential to undermine the[ ]

twin purposes" of  AEDPA, which was enacted to "'reduce delays in the execution of state and

federal criminal sentences, particularly in capital cases,'" and to encourage petitioners to seek

relief from state courts first.  *Id.* at 276-77 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)).

### 1.    "New Facts" Supporting *Atkins* and Competency Claims

Spivey argues that *Rhines* authorizes the Court to stay these proceedings so he can

exhaust "new facts" in state courts – namely, the opinions and observations of Drs. Greenspan

and Scambler and special education teacher Karen Thompson.  *See, e.g.,* ECF No. 32 at PageID#:

6211-14.  He claims this evidence will "further support" his *Atkins* and competency claims,

11

(4:16CV0384)

asserted in grounds one and two of both his original and proposed amended petitions.  ECF No. 34 at PageID#: 6214.

Respondent counters, first, that Spivey is not entitled to a *Rhines* stay to exhaust "new facts" supporting his *Atkins* and competency claims, because those claims are already exhausted.  ECF No. 33 at PageID #: 6211.  The Court agrees.

Spivey raised his competency claims on direct appeal to the Ohio Supreme Court and in his first post-conviction petition.  *See Spivey*, 81 Ohio St.3d at 408-11; *Spivey*, 2002 WL 418373, at *4-8.  He raised his *Atkins* claim in a second post-conviction petition.  *See Spivey*, 2014 WL 818640.  He appealed the state courts' denial of his post-conviction petitions up to the Ohio Supreme Court, which declined jurisdiction over both appeals.  ECF No. 19-13 at PageID #: 2509; ECF No. 19-17 at PageID #: 3447.  Spivey, therefore, gave state courts "one full opportunity to resolve [these] constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  The claims are exhausted.

Thus, a return to state court to pursue these claims would be futile, as they would be barred under Ohio's *res judicata* doctrine.  *See State v. Perry*, 10 Ohio St.2d 175, 180 (1967) (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.); *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) (Ohio's *res judicata* rule is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions).

(4:16CV0384)

Spivey could claim that his presentation of the "new facts" he has obtained to state court would overcome Ohio's *res judicata* bar. There is a "new evidence" exception to the rule, which applies when a petitioner presents evidence *dehors*, or outside, the record to support a claim on post-conviction. *See, e.g.*, *State v. Smith*, 17 Ohio St.3d 98, 101 n.1 (1985). To fall within this exception, however, "it is not sufficient for the petitioner to simply present evidence outside the record, he must also demonstrate that the evidence was not available at the time of his trial, or at the time of his direct appeal." *State v. Jones*, No. 2001-A-0072, 2002 WL 31812945, at *3 (Ohio App. 11th Dist. Dec. 13, 2002). Moreover, the outside evidence must meet "some threshold level of cogency." *State v. Lynch*, No. C-010209, 2001 WL 1635760, at *3 (Ohio App. 1st Dist. Dec. 21, 2001). It "must be 'competent, relevant and material' to the claim, be more than marginally significant, and advance the claim 'beyond mere hypothesis and a desire for further discovery.' . . . [I]t must not be cumulative of or alternative to evidence presented at trial." *State v. Fears*, No. C-990050, 1999 WL 1032592, at *3 (Ohio App. 1st Dist. Nov. 12, 1999) (citations omitted). As will be explained in greater detail below, Spivey's "new facts" are not new at all; they were available to him at the time of trial, direct appeal, and post-conviction proceedings, and are either cumulative to, or based upon, evidence he already has presented to state courts. *See, e.g.*, *State v. Richey*, No. 12-97-7, 1997 WL 722782, at *2 (Ohio App. 3rd Dist. Nov. 18, 1997) ("A review by a second expert of an expert's analysis of scientific data presented at trial is not 'new evidence [ ]'" such that petitioner could avoid the *res judicata* bar); *Frazier v. Bobby*, No. 3:09CV1208, 2011 WL 5086443, at *25 (N.D. Ohio Oct. 25, 2011) (Gaughan, J.) (finding additional expert report was not "new evidence" for *Atkins* claim such that it would overcome

13

(4:16CV0384)

procedural default based on Ohio's *res judicata* bar).  Spivey's *Atkins* and competency claims are

exhausted.  As it would be futile to return to them to state court for re-litigation, the *Rhines* stay-

and-abeyance procedure is not available to Spivey on those claims.

Spivey attempts to move his request within reach of *Rhines* by arguing that the "new

evidence . . . is so substantial as to create a *new claim*," which must be exhausted in state court.

ECF No. 34 at PageID #: 6239 (emphasis added).  He maintains these experts are more

"competent" and their opinions more "relevant and compelling," than those presented at trial and

post-conviction hearings.  ECF No. 34 at PageID #: 6239; ECF No. 32 at PageID #: 6214.

Spivey cites Justice Sotomayor's dissent in *Cullen v. Pinholster*, 563 U.S. 170 (2011), to support

the proposition that "the addition of substantial new facts garnered during an investigation

completed after state post-conviction could constitute a new claim."  ECF No. 34 at PageID #:

6236-37.  In *Pinholster*, the Court held that a federal habeas court's deferential review of claims

adjudicated on the merits in state court under AEDPA's § 2254(d)(1) "is limited to the record

that was before the state court that adjudicated the claim. . . ."  *Id.* at 181.  Spivey notes that

Justice Sotomayor observed,

> There may be situations in which new evidence supporting a claim adjudicated on
> the merits gives rise to an altogether different claim.  The majority opinion does
> not foreclose this possibility.
>
> I assume that the majority does not intend to suggest that review is limited to the
> state-court record when a petitioner's inability to develop the facts supporting his
> claim was the fault of the state court itself.

*Id.* at 213 n.5 (Sotomayor, J., dissenting) (citations omitted).  Later in her opinion, the Justice

described one such situation, where a habeas petitioner obtains potentially exculpatory evidence

14

(4:16CV0384)

that the State had improperly withheld after the petitioner had already exhausted his *Brady* claim in state courts.  *Id.* at 215-16.  The majority responded, "Though we do not decide where to draw the line between new claims and claims adjudicated on the merits, Justice Sotomayor's hypothetical involving new evidence of withheld exculpatory witness statements may well present a new claim."  *Id.* at 186 n.10 (citations omitted).

Sotomayor's hypothetical is easily distinguished from Spivey's alleged "new claims." Spivey does not contend the State or any individual or circumstance prevented him from obtaining these particular expert reports and teacher's affidavit.  Nor does he claim the expert reports are based on new information or techniques not available at the time of his trial or post-conviction proceedings.  The language in *Pinholster* "did not turn federal habeas into a free-standing mechanism for gathering evidence for the purpose of presenting it in state court. . . . The fact that there will be some cases in which new evidence makes a claim unexhausted, that cannot be the case for every habeas claim or there would be no finality."  *Waddy v. Robinson, No. 3:98-cv-084, 2013 WL 3087294, at *1 (S.D. Ohio June 18, 2013)* (Report & Recommendation) (internal quotation marks and citation omitted).

"To constitute 'newly discovered evidence,' the evidence must have been previously unavailable."  *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  As explained above, Spivey retained several experts who opined on issues relating to his mental condition, competency, and intellectual abilities before trial, during his trial, and for his first and second post-conviction proceedings.  *See Spivey*, 81 Ohio St.3d at 406-07, 421-24 (direct appeal); *Spivey*, 2002 WL 418373, at *7-8 (first post-conviction petition) *Spivey*, 2014 WL

15

(4:16CV0384)

818640, at *2-3 (*Atkins* post-conviction petition).  Spivey does not contend the "new" reports

disclose new information.  Rather, they just offer new conclusions.  For example, Spivey states

that Dr. Greenspan based his opinions on his review of "multiple records, including hospital

records, prior psychological reports, and the testimonies at the mitigation hearing, post-

conviction, and *Atkins* hearings."  ECF No. 32 at PageID #: 6211.  But Spivey's post-conviction

*Atkins* expert, Dr. Smalldon, used the same records to formulate his opinions.  *See* ECF No. 19-

15 at PageID #: 2943-44.  Spivey's "newly discovered evidence," therefore, does not constitute

new evidence, much less new claims.  Instead, it is additional evidence Spivey seeks to use to

buttress claims previously litigated in state courts.

Indeed, as Respondent points out, the Sixth Circuit recently ruled in a capital  habeas case

that the *Rhines* stay-and-abeyance mechanism does not apply to "unexhausted evidence."  In

*Carter v. Mitchell*, 829 F.3d 455, 464-65 (6th Cir. 2016), a petitioner sought to stay his habeas

case and return to state court to present additional evidence supporting claims that were on

remand to the district court after the circuit court had determined that he had not procedurally

defaulted them.  The petitioner had obtained new mitigation evidence, primarily from a social

worker's report prepared at the time of his trial, to support his ineffective-assistance-of-counsel

claims regarding the presentation of mitigation evidence at trial.  *Id.*  The circuit court denied his

request.  *Id.* at 467.  It determined that because the evidence at issue was available at the time of

his trial, even though it was never made a part of any state-court record, it was "certainly not

new."  *Id.* at 466.  The evidence might have been "more compelling," it observed, but "that does

not by itself allow us to extend *Rhines* stays to encompass 'unexhausted evidence[.]'"  *Id.* at 467.

(4:16CV0384)

The court considered the petitioner's request an attempt "to use *Rhines* as an end-run around *Pinholster*, with the added benefit that a return to state court might delay his impending death sentence for a substantial period." *Id.*  It concluded,

> Allowing a petitioner periodically to discover (or rediscover) information about himself would frustrate that goal, and could incentivize capital defendants to "deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death."

*Id.* (quoting *Rhines*, 544 U.S. at 277-78).

Even before *Carter* was decided, the Sixth Circuit and district courts within the circuit repeatedly found in capital habeas cases that additional, newly obtained expert reports or opinions were not significant or substantial enough evidence upon which to grant the requested relief.  One district court, for example, in denying a petitioner's motion for funds to retain an intellectual-disability expert to support his habeas *Atkins* claim, opined:

> In short, Woodall was provided with an opportunity in state court to explore the issue of his mental retardation.  After a thorough evaluation, it was determined that Woodall did not qualify as seriously mentally retarded under Kentucky [law].  Habeas review is not the proper forum for Woodall to engage in expert shopping in hopes of obtaining a conflicting opinion.

*Woodall v. Simpson*, No. 5:06CV-P216-R, 2009 WL 464941, at *2 (W.D. Ky. Feb. 24, 2009).

*See also Bedford v. Bobby,* 645 F.3d 372, 379 (6th Cir. 2011) ("That different doctors reach different conclusions about an individual's mental health does not itself prove that *any one* of the doctors has shown a cognizable basis for granting a *Ford* hearing.") (emphasis in original);

*Murphy v. Ohio*, 551 F.3d 485, 500 (6th Cir. 2009) (discounting affidavit supporting habeas *Atkins* claim because it "add[ed] nothing more than evidence previously offered at trial"); *Group v. Robinson*, No. 4:13CV1636, 2016 WL 3033408, at *2 (N.D. Ohio May 27, 2016) (Zouhary, J.)

17

(4:16CV0384)

(denying motion to alter or amend judgment based on "new evidence" including a DNA expert report that was not "newly discovered" because petitioner had been advancing claims for years and expert was previously available); *Frazier*, 2011 WL 5086443, at *28 (finding additional expert report supporting habeas *Atkins* claim offered a different conclusion than, but did not undermine, petitioner's expert at state *Atkins* hearing).

Spivey's *Atkins* and competency claims, like the petitioner's ineffective-assistance claims in *Carter*, are amenable to indefinite factual development. Arguably, there will always be expert opinions to investigate and present to a court if the experts prove more "competent" and their opinions more "relevant and compelling" than opinions originally presented at trial or post-conviction hearings. But those expert opinions are not "new evidence." Spivey had a full opportunity to develop those claims in state court; any return there would be futile and defeat AEDPA's express goal of avoiding unnecessary delay in death penalty cases. Accordingly, the Court denies Spivey's request to stay his habeas action under *Rhines v. Weber* so he can "exhaust new facts" relating to his *Atkins* and competency claims.

### 2.    Trial Counsel Ineffective-Assistance and *Miranda* Claims

Spivey also requests a stay so that he can present in state court two new claims based on the expert reports of Drs. Greenspan and Scambler: a trial counsel ineffective-assistance claim for failing to investigate his mental health and a *Miranda* claim. *See, e.g.*, ECF No. 32 at PageID#: 6214. Respondent argues these claims also are not unexhausted, but are procedurally defaulted based on Ohio's *res judicata* bar, and a *Rhines* stay to pursue them in state court is foreclosed under *Carter*. ECF No. 33 at PageID #: 6222-25. The Court agrees.

18

(4:16CV0384)

Spivey raised a broad claim of ineffective assistance of trial counsel to the Ohio Supreme

Court on direct appeal.  *See* ECF No. 19-7 at PageID #: 1460-64.  He made a cursory reference to

counsel's lack of "mitigation preparation" (ECF No. 19-7 at PageID #: 1464), but without any

analysis, and the court did not address it.  *See Spivey*, 81 Ohio St.3d at 417-19.  He did not raise

the claim to the state appellate court on direct appeal or at all on post-conviction.  Spivey,

therefore, did not fairly present this claim to state courts.  *Baldwin v. Reese*, 541 U.S. 27, 29

(2004) (federal habeas petitioners must "fairly present" federal constitutional claims "in each

appropriate state court" before seeking relief in the federal courts).  Similarly, Spivey never

raised a *Miranda* claim on direct appeal or post-conviction.

Moreover, Spivey no longer can present either claim in state court due to Ohio's filing

deadlines, post-conviction procedures, and *res judicata* rules.  *See* Ohio R. Crim. P. 33(B)

(defendant may be entitled to file delayed motion for new trial if he was "unavoidably prevented"

from filing motion or there is "newly discovered evidence"); Ohio Rev. Code § 2953.23(A)(1)

(second, successive, or untimely post-conviction petition permitted if petitioner shows:  (1) that

he was "unavoidably prevented from discovery of the facts" of the claim, or the claim is based on

a new federal or state right the Supreme Court has recognized that applies retroactively; *and* (2)

but for constitutional error at trial, no reasonable factfinder would have found petitioner guilty of

offense or eligible for death sentence); *Perry*, 10 Ohio St.2d at 180.  As discussed above, the

expert reports Spivey seeks to present to support these claims were available at his trial and post-

conviction proceedings, and are not "new."  The claims, therefore, are not unexhausted, but

procedurally defaulted.  *See Gray*, 518 U.S. at 161-62.

19

(4:16CV0384)

Spivey had the opportunity to develop these claims in state court, but did not. A return to state court to pursue them would be futile and cause unnecessary delay, and Spivey therefore is not entitled to a stay under *Rhines* for that purpose. *See Carter*, 829 F.3d at 467.

### 3. *Brady* Claim

Spivey further seeks a stay while he litigates in state court a claim that the State improperly withheld exculpatory information at his trial. *See* ECF No. 32 at PageID #: 6214-15. He claims he recently discovered an exculpatory police report inside a sealed envelope that was filed with the trial court, but never disclosed to defense counsel at trial. ECF No. 32 at PageID #: 6215; *see also* ECF No. 27-5. He maintains the report shows there was no sign of forced entry into the victim's house, which contradicts a police detective's trial testimony that the door of the victim's home had been kicked open and had a footprint on it. ECF No. 32 at PageID #: 6215.

Respondent argues this claim also is not unexhausted but is procedurally defaulted. ECF No. 33 at PageID #: 6226. Spivey never raised a *Brady* claim in state court. As explained above, the claim therefore would be barred by Ohio's *res judicata* rule. And the police report would not overcome the *res judicata* bar because it was available to Spivey's appellate counsel and part of the trial record. The envelope containing the report was filed with the trial court, which specified that it was sealed for the very purpose of preserving it for appeal and "subject to opening" at that time. *See* ECF No. 19-4 at PageID #: 753 (police report). Spivey's *Brady* claim, therefore, is not unexhausted, but is procedurally defaulted.

Respondent further argues that the claim is meritless because evidence introduced at trial clearly demonstrated forced entry into the victim's home. ECF No. 33 at PageID #: 6226-27.

20

(4:16CV0384)

This includes photographs and the testimony of the victim's friend, Patricia Finger, who first found the victim and corroborated the detective's trial testimony about the door's condition. *See* ECF No. 20-3 at PageID #: 4338-39 (photograph trial exhibits); ECF No. 20-3 at PageID #: 4265-67 (trial testimony).

Thus, Spivey is not entitled to a *Rhines* stay to pursue his *Brady* claim, which is not unexhausted and is plainly meritless.

### 4. *Atkins* Counsel Ineffective-Assistance Claim

Finally, Spivey seeks a stay so that he can raise in state court a claim that his post-conviction *Atkins* counsel was constitutionally ineffective in failing to obtain an "appropriate" expert on intellectual disability. *See, e.g.*, ECF No. 32 at PageID #: 6214.

Respondent correctly argues that a stay is not warranted for this claim because it is not cognizable on federal habeas review. ECF No. 33 at PageID #: 6228. AEDPA's § 2254(i) provides: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." This provision is grounded in the well-settled rule that the constitutional right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Accordingly, there is no constitutional right to appointed counsel in habeas cases, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991), or during state post-conviction collateral review, *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991). And, as there is no constitutional right to an attorney in post-conviction proceedings, a habeas petitioner cannot claim unconstitutional deprivation of effective assistance of counsel in such proceedings.

21

(4:16CV0384)

*Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425 (6th Cir. 2003) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)).

Spivey's claim of ineffective assistance of post-conviction *Atkins* counsel is plainly meritless, and Spivey is not entitled to a stay under *Rhines* to pursue it in state court.

### 5. Conclusion

For these reasons, the Court denies Spivey's motion to stay these habeas proceedings while he attempts to pursue state-court remedies he thinks necessary or appropriate to exhaust his purported new facts and new claims in state court.

### B. Motion to Amend Habeas Petition

Spivey also seeks leave to amend his Petition to add the new facts and claims discussed above. ECF No. 27 at PageID #: 6033. Petitioner attached the proposed Amended Petition (ECF No. 27-2) to his motion. Under Rule 15 of the Federal Rules of Civil Procedure, a habeas petitioner may amend or supplement a petition once as a matter of course within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1)(B). *See also* 28 U.S.C. § 2242 (habeas actions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Fed. R. Civ. P. 81(a)(4) (federal civil rules "apply to proceedings for habeas corpus"); Habeas Corpus Rule 12 (federal civil rules apply in habeas cases "to the extent that they are not inconsistent with any statutory provisions or [the habeas] rules"). In this case, that time expired on June 3, 2016, twenty-one days after Spivey filed and served his Petition (ECF No. 17) on May 13, 2016. Spivey filed this motion on October 28, 2016. ECF No. 27.

22

(4:16CV0384)

Rule 15 permits amendment after twenty-one days from filing "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  In that situation, the rule advises that courts "should freely give leave when justice so requires."  Id.  In determining whether to grant leave to amend, courts should consider "'[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'"  Coe v. Bell, 161 F.3d 320, 341 (6th Cir. 1998) (quoting Brooks v. Celeste, 39 F.3d 125, 130 (6th Cir. 1994)).

Federal habeas actions, however, also are subject to a one-year statute of limitations.  28 U.S.C. § 2244(d)(1).  A motion to amend a habeas petition, therefore, "will be denied where it is filed after that period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Rule 15(c)(2)."  Howard v. United States, 533 F.3d 472, 475-76 (6th Cir. 2008).  Rule 15(c)(1) permits relation-back of a proposed amendment to a habeas petition when both the pleading and the proposed amendment arise out of the same "conduct, transaction, or occurrence."  Fed. R. Civ. P. 15(c)(1)(B).  A proposed amendment may relate back to a timely petition "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts."  Mayle v. Felix, 545 U.S. 644, 664 (2005).  A claim will not relate back, however, to the extent that it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  Id. at 650.

23

(4:16CV0384)

In addition, AEDPA's statute of limitations is subject to equitable tolling where the petitioner establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way" and prevented timely filing.  *Pace v. DiGuglielmo,* *544 U.S. 408, 418 (2005)*.

### 1.    AEDPA Statute of Limitations

Spivey first argues that he should be granted leave to amend his Petition because his motion to amend was filed within the correct limitations period, which he claims expired on October 28, 2016.  He claims Respondent and the Court in its Case Management Order were incorrect in finding the correct expiration date is May 13, 2016.  ECF No. 27 at PageID #: 6027-28.  At issue is whether the statute was tolled by Spivey's earliest filing in his post-conviction *Atkins* proceeding – a motion for appointment of counsel.

Spivey's limitations period was triggered on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).  Under 28 U.S.C. § 2244(d)(2), however, the limitations period is tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral review.  A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  According to Spivey, his direct appeals concluded on October 5, 1998, but the statute was tolled due to pending post-conviction proceedings until the Ohio Supreme Court denied his post-conviction *Atkins* petition, on October 28, 2015.  The

24

(4:16CV0384)

limitations period then expired, he argues, one year from the following day, or October 28, 2016.

ECF No. 10 at PageID #: 34.

Respondent contends that Spivey fails to account for the period of time in which the

limitations period ran between the day after the Ohio Supreme Court denied his first petition for

post-conviction relief, on July 3, 2002, which triggered the statute of limitations, and the day

before he filed his *Atkins* petition, or December 20, 2002, which tolled the limitations period.

ECF No. 30 at PageID #: 6187. That time period totaled 168 days. The limitations period, she

argues, began to run again the day after the Ohio Supreme Court denied the *Atkins* petition, on

October 28, 2015, and expired on May 13, 2016 – 197 days from October 29, 2015. ECF No. 30

at PageID #: 6187.

Spivey responds that the motion for appointment of counsel he filed in the trial court on

June 26, 2002 (ECF No. 19-13 at PageID #: 2708-09), just six days after *Atkins* was decided,

should be construed as having initiated the post-conviction proceedings and therefore tolled the

statute of limitations. ECF No. 27 at PageID #: 6027. He explains that in *Atkins* the Supreme

Court entrusted the states with the "task of developing appropriate ways to enforce the

constitutional restriction" upon the execution of their sentences. *Atkins*, 536 U.S. at 317 (quoting

*Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986)). Therefore, he claims, before he could file a

petition he had to wait for the Ohio Supreme Court to render its first *Atkins* decision in *State v.*

*Lott*, 97 Ohio St.3d 303 (2002), establishing substantive and procedural guidelines for *Atkins*

challenges. ECF No. 27 at PageID #: 6028. Although *Lott* granted petitioners 180 days from the

(4:16CV0384)

date the decision was issued in which to file an *Atkins* petition, he argues, he did so in nine days, on December 20, 2002.  *See* ECF No. 19-13 at PageID #: 2713.

Respondent, however, is correct that a motion for appointment of counsel is not a "properly filed" petition for state post-conviction relief for statutory tolling purposes, and Spivey's statute of limitations was not tolled until he filed a petition.  As noted above, a state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing.  *Artuz*, 531 U.S. at 8. Under Ohio law, a petition for post-conviction relief must state the grounds for relief relied upon and ask the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.  Ohio Rev. Code § 2953.21(A)(1)(a).  Spivey's motion for appointment of counsel does not seek review of the judgment of conviction or sentence and therefore does not satisfy the requirements of Ohio law to qualify as a "properly filed" post-conviction petition for purposes of § 2244(d)(2).  *See, e.g.*, *Voravongsa v. Wall*, 349 F.3d 1, 4-6 (1st Cir. 2003) (request for counsel was not a request for post-conviction relief under state post-conviction law requiring a specific prayer for relief from judgment); *Hardiman v. Galaza*, 58 Fed.Appx. 708, 710 (9th Cir. 2003) (petition for writ of mandamus is not an application for state post-conviction or other collateral review of the pertinent judgment within the meaning of § 2244(d)(2)); *Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002) (mandamus application seeking order directing trial court to perform its duty did not seek review of judgment and was not a properly filed application for post-conviction relief or other collateral review for statutory tolling under § 2244(d)(2)); *Beery v. Ault*, 312 F.3d

(4:16CV0384)

948, 950-51 (8th Cir. 2002) (holding a "request for post-conviction relief counsel . . . does not constitute a properly filed application for State post-conviction review" and "there is no federal precedent for treating a motion for appointment of counsel as a properly filed application for post-conviction relief") (internal quotation marks and ellipsis omitted); *Dunn v. Jackson*, No. 3:03CV133, 2005 WL 1067688, at *4 (S.D. Ohio May 4, 2005) report and recommendation adopted, 2005 WL 1935674 (S.D. Ohio Aug. 5, 2005) (petitioner's state-court motion to appoint counsel to reopen direct appeal did not toll running of statute of limitations because the motion did not seek post-conviction or collateral relief of the type described in § 2244(d)(2), but merely sought appointment of counsel as a first step towards seeking such relief).

Accordingly, the Court finds that Spivey's proposed Amended Petition was not filed within his statute of limitations period, and Spivey is not entitled to leave to amend his Petition on that basis.

### 2.      Equitable Tolling

Spivey further argues that if his amendments were not filed within the limitations period, equitable tolling should apply.  ECF No. 27 at PageID #: 6028-32.  "Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001), abrogated on other grounds by *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750 (6th Cir. 2011)); *see also Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are 'customarily subject to 'equitable tolling[.]'") (citations omitted).  As

27

(4:16CV0384)

noted above, habeas petitioners may be entitled to equitable tolling if they (1) have been pursuing

their rights diligently, and (2) "some extraordinary circumstance" prevented their timely filing.

*Pace*, 544 U.S. at 418.  Courts may consider the following factors in determining whether

equitable tolling should be granted:  (1) petitioner's lack of notice of the filing requirement; (2)

petitioner's lack of constructive knowledge of the filing requirement; (3) petitioner's diligence in

pursuing their rights; (4) absence of prejudice to the respondent; and, (5) petitioner's

reasonableness in remaining ignorant of the legal requirement for filing the claim.  *E.g.*, *Griffin v.*

*Rogers*, 399 F.3d 626, 635 (6th Cir. 2005).  These factors are neither comprehensive nor relevant

to every case.  *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003).  Rather, these

determinations are made on a case-by-case basis, "enabl[ing] courts to meet new situations that

demand equitable intervention, and to accord all the relief necessary to correct particular

injustices."  *Holland v. Florida*, 560 U.S. 631, 650 (2010) (internal quotation marks and

alterations omitted).

Here, the Court finds that during the relevant time periods – between the date *Atkins* was

decided and the date he filed his *Atkins* petition in state court and during the initial stage of these

federal habeas proceedings – Spivey diligently pursued his state and federal rights.  Shortly after

the *Atkins* decision was issued, he filed a motion to appoint counsel in the trial court, which put

both the court and the State on notice of Spivey's intent to file an *Atkins* petition.  Indeed, the

State acknowledged in a responsive pleading that it was "aware of the underlying facts and the

allegation made as to the mental abilities of the Petitioner in this matter. . . ."  ECF No. 19-13 at

PageID #: 2708.  In addition, habeas counsel was appointed on February 26, 2016, less than three

28

(4:16CV0384)

months before the expiration of the limitations period. ECF No. 5. As Spivey states, that is a short period of time in which to review more than twenty-five years of litigation and voluminous records, conduct a preliminary investigation, and draft a habeas petition. ECF No. 31 at PageID #: 6201. Nonetheless, counsel filed Spivey's Petition on the May 13, 2016 limitations deadline. Spivey's motion to amend was filed a little more than five months later, still just nine months after counsel was appointed.

Furthermore, Spivey's case was in an unusual procedural posture when *Atkins* was decided in 2002. His direct appeals were over and his first post-conviction appeals nearly so.[2] But the substantive and procedural rules for *Atkins* challenges in Ohio had not yet been established. The Court finds this is an "extraordinary circumstance" justifying equitable tolling. Respondent will not be unduly burdened in responding to the new claims.[3]

Accordingly, Spivey's motion to amend is granted.

### III. Conclusion

For the foregoing reasons, Petitioner's Motion to Amend Habeas Petition with Additional Claims (ECF No. 27) is granted. Spivey shall forthwith file his Amended Petition. Respondent shall file an Amended Return of Writ no later than thirty days from the date of this Order. Petitioner's Motion to Hold Petition for Writ of Habeas Corpus in Abeyance Pending Exhaustion

---

[2] The Ohio Supreme Court declined jurisdiction over Spivey's first post-conviction appeal on July 3, 2002. ECF No. 19-13 at PageID #: 2509.

[3] As the Court finds equitable tolling applies here, it will not address the parties' arguments regarding relation back of the proposed amendments to the original Petition.

29

(4:16CV0384)

of Newly Discovered Evidence Being Presented to State Court (ECF No. 32) is denied.


　　　　　　　IT IS SO ORDERED.


　March 24, 2017　　　　　　　　　　　　/s/ Benita Y. Pearson　　　　　　
Date　　　　　　　　　　　　　　　　Benita Y. Pearson
　　　　　　　　　　　　　　　　　　United States District Judge

30